**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KEONNA M. BROWN**         ) <br> **305 Leeanne Road**         ) <br> **Essex (Baltimore Co.), Maryland 21221**   ) <br> **on behalf of herself and all others**    ) <br> **similarly situated**          ) <br>          ) <br>      *Plaintiff,*         ) <br>          ) <br>     *vs.*          ) <br>          ) <br> **JTH TAX, INC., D/B/A LIBERTY TAX**   ) <br> **SERVICES**          ) <br> **1716 Corporate Landing Parkway,**   ) <br> **Virginia Beach, Virginia 23454,**    ) <br>          ) <br>     *Defendant.*        ) <br> _____ ) | **CASE NO.: _____** <br><br><br> **JURY TRIAL DEMANDED** |

**<u>PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND</u>**

COME NOW Plaintiff Keonna M. Brown ("Plaintiff"), on behalf of herself and all others similarly situated, to file Plaintiff's Original Class Action Complaint against Defendant JTH Tax, Inc, d/b/a Liberty Tax Services ("Defendant"). Plaintiff seeks certification of her claims against Defendant as a class action. Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

**I.**      <u>**INTRODUCTION.**</u>

     1.     Defendant provides tax preparation services in Maryland and nationwide. For consumers who are due a tax refund, Defendant offers an additional service, namely, it provides short-term loans to consumers for a fixed fee. These loans are known as Refund Anticipation Loans. The Maryland Consumer Protection Act and Maryland's Refund

1

Anticipation Loan and Check Act govern Defendant's conduct with respect to these loans.

2. The Consumer Protection Act and Refund Anticipation Loan and Check Act require Defendant to disclosure information to consumers when they apply for these loans. Those disclosures include, generally, such information as the annual percentage rate for the loan calculated in accordance with the Truth in Lending Act and alternative refund options. Additionally, Defendant is prohibited from receiving a portion of the bank fees and finance charge for each loan.

3. The Plaintiff, individually and on behalf of the proposed class, brings this action for Defendant's failure to make the required disclosures and to forego sharing fees.

4. The United States Department of Treasury has determined that RAL usage is highly concentrated in poor and minority communities.[1] The insidious effect of Defendant's conduct is to entice these lower income earning and working class consumers into a bad deal that pilfers much-needed funds for little or no benefit. These loans merely provide the possibility of quicker access to one's tax refund for a fee that is tantamount to a triple-digit interest rate. Defendant's conduct deprives consumers of critical information they need to inform their decision making process about Defendant's products and services.

5. Plaintiff is but one of Defendant's many victims in the state, and accordingly complains against Defendant on behalf of herself and all other Marylanders similarly situated for

---

[1] Characteristics of User of Refund Anticipation Loans and Refund Anticipation Checks, Department of Treasury, 2010, at pp. 1, 9, *available at* http://www.treasury.gov/resource-center/financial education/Documents/Characteristics%20of%20Users%20of%20Refund%20Anticipation%20Loans%20and%20Refund%20Anticipation%20Checks.pdf (last visited Dec. 7, 2011) (citation omitted).

2

Defendant's violations of state law regarding deceptive and unfair trade practices.

II.    **PARTIES.**

6.    Plaintiff Keonna Brown is a citizen of Maryland residing at 305 Leeanne Road Essex (Baltimore County), Maryland 21221.

7.    Defendant prepared Ms. Brown's taxes at one of Defendant's Baltimore offices located in the District of Maryland. In 2010, Liberty Tax prepared her taxes at the 6414 Reisterstown Road Baltimore City, Maryland 21215 location.

8.    Defendant facilitated a Refund Anticipation Loan ("RAL") for Plaintiff during the class period. Specifically, Defendant facilitated a Republic Electronic Refund Check ("ERC") for Ms. Brown in 2010 at an office in Baltimore.

9.    Defendant JTH Tax, Inc. d/b/a Liberty Tax Services is a Delaware corporation with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454 and can be served through its registered agent Registered Agent Solution, Inc., Unit B 2nd Floor 836 Park Avenue Baltimore, Maryland 21201. Defendant provides tax preparation services through more than 3,800 offices in the United States and Canada, with approximately 71 franchise offices in Maryland, all doing business under the name Liberty Tax Services.

10.    Although Defendant markets these products under different names, all of the products are "refund anticipation loans" as defined by the Maryland Refund Anticipation Loan and Refund Anticipation Check Act, as they all include common features – the extension of a short-term loan, secured and repaid directly from the consumer's IRS tax refunds.

Therefore, throughout this Complaint when the term "RAL" is generically used it will refer to all of the refund anticipation products offered by the Defendant.

## III. JURISDICTION.

11. This Court has jurisdiction over Defendant since at all relevant times Defendant has regularly and systematically transacted business within the State of Maryland as a provider of tax return preparation services and other services. Defendant derives substantial revenue from Maryland residents.

12. This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act ("CAFA") because there are more than one-hundred class members, all of the members of the class are citizens of a state (Maryland) different from that of Defendant, and the aggregate of class members' claims is more than $5 million. 28 U.S.C. § 1332(d) (2011).

13. Venue is proper in this Court because the tax preparation services and loan marketing and facilitation giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2) (2011). Venue is also proper in this Court because the Defendant has numerous offices in this District. 28 U.S.C. § 1391(b)(1) (2011).

## IV. FACTS.

### A. DEFENDANT AGGRESSIVELY MARKETS AND FACILITATES REFUND ANTICIPATION LOAN PRODUCTS AT EXORBITANT TRIPLE-DIGIT INTEREST RATES TO THE WORKING POOR AND MINORITIES.

14. Plaintiff incorporates by reference all portions and paragraphs of this Complaint in each section and portion of the Complaint.

4

15. Refund Anticipation Loans ("RAL") are short-term loans or extensions of credit that are secured and repaid directly from the consumer's IRS tax refunds. These loans are marketed, arranged and facilitated by for-profit tax preparers such as Defendant in coordination with banking entities that provide the loan and banking products. RALs include exorbitant finance charges that, when properly calculated in accordance with the Truth in Lending Act, often exceed 100% APR.

16. Although a significant profit source to Defendant and other for-profit tax preparers, and a fundamental part of their business models, these aggressively marketed bank products provide little to no value to consumers at predatory interest rates and fees, often in conjunction with exorbitant tax preparation fees for straightforward tax filings. Tax filers can usually get their federal tax refund in 8 to 15 days by direct deposit, without getting a loan or paying any extra fees to companies like Defendant. The IRS usually issues refunds by check within 21 to 28 days.

17. The Department of Treasury has determined that RAL usage is highly concentrated in poor and minority communities.[2] Across the U.S., just 20% of all communities account for nearly 70% of all RALs.[3] Defendant and other tax preparers target these high-interest-rate loans to minorities and the working poor, particularly those who receive the Earned Income Tax Credit ("EITC"). The median adjusted gross income among RAL

---

[2] Characteristics of User of Refund Anticipation Loans and Refund Anticipation Checks, Department of Treasury, 2010, at pp. 1, 9, *available at* http://www.treasury.gov/resource-center/financial education/Documents/Characteristics%20of%20Users%20of%20Refund%20Anticipation%20Loans%20and%20Refund%20 Anticipation%20Checks.pdf (last visited Dec. 7, 2011) (citation omitted).
[3] *Id.* at p. 17-20.

consumers is $19,768.[4]   In 2008, although only 17% of tax filers received the EITC,

EITC claimants comprised 64% of RAL consumers. Viewed another way, 33% of EITC

claimants purchased a RAL, compared to only 3% of non-EITC claimants.[5]

18.     Defendant aggressively markets RALs to its customers for whom it provides tax

preparation services, as these predatory bank products are a critical part of its business

model. In 2009, about 74% of Defendant's customers obtained a RAL.[6]   Within the

general population, by comparison, fewer than 15% of tax filers opted for these products.

This is not mere coincidence. Defendant aggressively markets RALs to the working poor

so that a significant portion of the EITC goes to Defendant rather than the intended

beneficiaries. Fees from these predatory bank products accounted for 28% of Defendant's

revenue in 2009, according to Defendant's Consolidated Financial Statement for 2010.

B.     **MARYLAND REFUND ANTICIPATION LOAN AND CHECK ACT.**

19.     Many states, including the state of Maryland, have passed laws specifically targeting

RALs in an effort to eradicate long-standing, deceptive and unconscionable practices in

the for-profit tax preparer industry. Maryland's RAL law, MD. CODE COM. LAW ANN. §

14-3801 *et seq.* (West 2011), focuses on the practices of tax preparers like Defendant

who market and facilitate RALs through third-party banks that actually provide the loans

and the bank products.

20.     Under Maryland's RAL law, a RAL includes "a loan arranged to be paid directly or

---

[4] *Id.* at 16.
[5] *Id.* at 13.
[6] National Consumer Law Center/Consumer Federation of America's "2011 Refund Anticipation Loan Report" at p. 22.

indirectly from the proceeds of a consumer's tax refund." MD. CODE COM. LAW ANN. § 14-3801(f) (West 2011). A RAL "includes a sale, assignment, or purchase of a consumer's tax refund at a discount or for a fee, whether or not the consumer is required to repay the buyer or assignee if the Internal Revenue Service denies or reduces the consumer's tax refund." MD. CODE COM. LAW ANN. § 14-3801(f)(2) (West 2011); *see also* § 14-3801(e).

21. Maryland's RAL law defines a "facilitator" as a person, other than a bank, savings and loan or credit union, who, among other things, "processes, receives, or accepts an application or agreement" for a RAL, "services or collects on" a RAL, or "facilitates the making of" a RAL. MD. CODE COM. LAW ANN. § 14-3801(d) (West 2011). Defendant is a facilitator as defined by Maryland's RAL law.

22. Maryland's RAL law prohibits "facilitators" such as Defendant from engaging in certain practices and requires the facilitators to disclose, in writing and orally, certain critical information about RALs, the finance charges and lower-cost alternatives. Most relevant to this class action are Maryland's RAL law's disclosure requirements and prohibition on the facilitator/tax preparer charging or imposing any fees for RALs other than fees charged by the creditor or bank.

23. Maryland's RAL law requires all facilitators to disclose conspicuously on a "form that is separate from the application" and in large type (ranging from "14-point to 18-point") specific information about the interest rate, fees and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant

7

add-on charges. MD. CODE COM. LAW ANN. § 14-3804 (West 2011). These written disclosures are required to be separate, conspicuous, and in large type so that they are not lost amidst multiple pages of fine print. *See id.* Facilitators are also required to make similar disclosures orally to each consumer and to post prominently these disclosures at each office on a document measuring no less than sixteen by twenty inches in 14-point type. MD. CODE COM. LAW ANN. §§ 14-3805, 14-3803 (West 2011).

24. Maryland's RAL law requires all facilitators to disclose on a separate sheet of paper in 14-point type face the interest rate (APR) as "using the guidelines established under the federal Truth in Lending Act." MD. CODE COM. LAW ANN. § 14-3804(a), (b) (West 2011). This same interest rate also must be accurately disclosed in the prominently displayed office posting and in individualized oral disclosures to the consumer. MD. CODE COM. LAW ANN. §§ 14-3803(b), 14-3805(a) (West 2011); *see also* § 14-3806(a)(5) ("A facilitator may not misrepresent a material fact or condition of a refund anticipation loan or refund anticipation check"); § 14-3802 (facilitators may not solicit or facilitate RAL without complying with this subtitle).

25. In addition, Maryland's RAL law prohibits the tax preparer, or any other entity other than the third-party bank or creditor, from receiving any fee related to an RAL. MD. CODE COM. LAW ANN. § 14-3806(a)(2) (West 2011) (Facilitators may not "[c]harge any fee to a consumer or require any other consideration for making or facilitating a refund anticipation loan or refund anticipation check other than the fee imposed by the creditor or other person that provides the refund anticipation loan or refund anticipation check.").

Instead, a tax preparer can only receive the same fees that would be charged to a consumer who did not receive a RAL or other tax-related financial products. MD. CODE COM. LAW ANN. § 14-3806(b) (West 2011).

26. A facilitator who violates any provision of Maryland's RAL law commits an unfair or deceptive trade practice and is subject to the remedies provided under the Maryland Consumer Protection Act. MD. CODE COM. LAW ANN. § 14-3807(a) (West 2011). Those remedies include attorney's fees and costs. MD. CODE COM. LAW ANN. § 13-408(b) (West 2011). In addition, a facilitator who willfully fails to comply with any provision of Maryland's RAL law is liable to the consumer for: (a) actual and compensatory damages; (b) $1,000 statutory damages; and (c) reasonable attorney's fees and costs. MD. CODE COM. LAW ANN. § 14-3807(b) (West 2011).

C.    **DEFENDANT'S ILLEGAL CONDUCT.**

27. Throughout the Class Period, Defendant has facilitated RALs through an arrangement with Republic Bank and Trust Co. ("Republic Bank"), a state-chartered bank based in Kentucky. Defendant marketed and facilitated two types of bank products: (a) Electronic Refund Check (ERC) or Electronic Refund Deposit (ERD), and (b) Refund Anticipation Loan ("Republic RAL"). Both of these products are RALs as defined by Maryland's RAL law.[7]

28. Defendant has a high percentage of low-income customers and customers who receive the EITC. In addition, as set forth above, Defendant has a high percentage of customers

---

[7] A representative copy of Defendant's loan agreement and product disclosures are attached as Exhibits 1 and 2.

who purchase the Republic RAL, ERC and ERD bank products. Many of Defendant's customers cannot afford to pay Defendants' fees for tax preparation services out-of-pocket. A key component to Defendant's marketing campaign is that there is no up-front cost to the customer. Although generally Defendant requires fees for tax preparation services to be paid at the time the customer's taxes are prepared, Defendant provides the option of deferring payment of those fees until the tax refund has been received from the IRS if the customer purchases a Republic RAL, an ERC or an ERD. In the case of a Republic RAL, tax preparation fees are deducted from the loan funds when the loan is provided. In the case of an ERC or ERD, the tax preparation funds are deducted from the refund amount. On information and belief, this component of these bank products expands the market for Defendant's tax preparation services, increases the amount that can be charged for tax preparation services, and increases the franchise fees and royalties collected by Defendant.

    i.   **<u>ERCs/ERDs.</u>**

29.   During the Class period, Defendant, through its franchise offices, facilitated ERCs/ERDs to its tax preparation customers (including Plaintiff and all proposed Class Members), following common practices and procedures and using uniform forms, applications and disclosures as described below. Each bank product entails the establishment of a "Deposit Account" at Republic Bank. The Deposit Account is a non-interest-bearing "account" established for the sole purpose of receiving the consumer's federal and/or state tax refund and disbursing those funds in a limited manner controlled by Republic Bank.

30.     The consumer cannot make any other deposits to this dummy account or direct any other withdrawals. When the consumer's tax return is sent to the IRS, the dummy account is identified as the destination for any refund to which the consumer may be entitled. Once the IRS is notified, the refund destination cannot be changed. If for any reason the consumer's refund is not deposited in the dummy account or if the refund is less than anticipated based upon Defendant's tax preparation services, the consumer is still held liable for the full amount of the loan.

31.     When the consumer's tax refund is deposited into the account, Republic Bank first disburses the funds to pay, among other things:

   (a)     "Bank Fees" to itself, some of which also are received by Defendant, including $29.95 minimum payment of a "Tax Refund Administration Fee," and, for the 2009 tax year, an additional $10.00 "Administration Fee" if a state tax refund is directed to the Deposit Account;

   (b)     any and all debts due to Defendant to pay for tax preparation services; and

   (c)     any and all other debts to Republic Bank including, for example, debts related to bank products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

32.     The ERC/ERD is a bank product of little to no value at an exorbitant finance charge. Named plaintiff Keonna Brown's experience for the 2010 tax year is exemplary. Ms.

11

Brown paid the $29.95 Tax Refund Administration Fee so that her tax refund could be direct deposited into a one-transaction dummy account (Deposit Account) at Republic Bank. The only "benefit" Ms. Brown received from this Rube Goldberg transaction was deferral of payment of the tax preparation fees for 12 days – a "benefit" for which she paid an exorbitant finance charge. To defer payment for approximately 12 days of her $354[8] in tax preparation fees Ms. Brown paid a proportionally exorbitant finance charge of $29.95.

33.     The ERC/ERD bank products are RALs as defined by Maryland RAL law. Each product encompasses an extension of credit by Defendant of the fee for tax preparation services, which otherwise would be due at the time the services were provided. With an ERC/ERD, Defendant grants deferral of payment for approximately 12 days (the time period needed to receive the tax refund). Defendant provides no disclosure of the **triple-digit** interest rate or finance charge for the ERC/ERD bank products in violation of Maryland RAL law, the Truth in Lending Act ("TILA"), and the Maryland Consumer Protection Act (MD. CODE COM. LAW ANN. § 13-101 *et seq.* (West 2011)). *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the

---

[8] $354 is an unconscionably high rate in and of itself for tax preparation services of this nature.

written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

34. Moreover, Defendant receives a portion of the Bank Fees in violation of the prohibition in MD. CODE COM. LAW ANN. § 14-3806(a)(2) (West 2011). Republic's Bank Product and Application Agreement acknowledges that a portion of the fees from its bank products (ERC/ERD and Republic RAL) are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such bank fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these bank products.

    **ii.**   **Republic RALs.**

35. During the Class period, Defendant facilitated Republic RALs to its tax preparation customers, following common practices and procedures and using uniform forms, applications and disclosures as described below. As with an ERC/ERD, a Republic RAL entails the establishment of a dummy "Deposit Account" at Republic Bank. The consumer receives the RAL loan funds one or two days after his or her taxes are prepared and filed. Prior to the 2010 tax year, the loans were between $300 and $7,500. For the 2010 tax year, the loans were for a set amount of $1,561.22. When the consumer's tax refund is deposited into the account, Republic Bank first disburses the funds to pay, among other things:

(a)    "Bank Fees" to itself, some of which are also received by Defendant, including: (i) $29.95 minimum payment of the "Tax Refund

Administration Fee;" (ii) what Republic terms the "finance charge" (*e.g.*, 0.78% of the loan amount for the 2009 tax year and set amount of $16.22 for the 2010 tax year); (iii) in the 2010 tax year only, a $45.00 "Credit Investigation Fee;" and (iv) in some instances a $10.00 "Administrative Fee" for state tax refunds;

(b)     any and all debts due to Defendant to pay for tax preparation services;

(c)     the debt for the RAL; and

(d)     any and all other debts to Republic Bank including, for example, debts related to bank products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

36.     The Republic RALs marketed and facilitated by Defendant are RALs, as defined by Maryland RAL law. Defendant misrepresented the finance charge by not including the Tax Refund Administration Fee (and where relevant the Administration Fee for state tax refunds) in the calculation of the finance charge, in violation of Maryland RAL law, TILA, and the Maryland Consumer Protection Act. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed,

14

the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

37. Moreover, Defendant receives a portion of the bank fees and finance charge in violation of the prohibition in MD. CODE COM. LAW ANN. § 14-3806(a)(2) (West 2011). Republic's Bank Product and Application Agreement acknowledges that a portion of the fees from its bank products (ERC/ERD and Republic RAL) are shared with tax preparers such as Defendant, and Defendant's consolidated financial statements (prepared by KPMG LLP and available at Defendant's website) confirm receipt of such bank fees. Indeed, over a quarter of Defendant's revenue in 2009 and 2010 was derived from these bank products.

D.   **FACTUAL ALLEGATIONS AS TO NAMED PLAINTIFF KEONNA BROWN.**

38. Ms. Brown's experience for the 2010 tax year is emblematic. Ms. Brown had her 2010 taxes prepared at a Liberty Tax Service location on January 15, 2011.

39. Defendant's tax preparation fee for these services was $354. Ms. Brown did not pay this fee at the time, but deferred payment to be taken out of her tax refund, which would be direct deposited into a one-transaction dummy account (Deposit Account) at Republic Bank.

40. Defendant charged Ms. Brown $29.95 as a "Tax Refund Administration Fee" to set up a Deposit Account to which the IRS deposited the tax refund. Upon information and belief, Ms. Brown received an electronic refund check from Defendant approximately 12 days after her return was filed.

15

41. Ms. Brown purchased an ERC which entitled her to a 12-day loan of the Defendant's tax preparation fee ($354).

42. The actual finance charge included the Tax Refund Administration Fee ($29.95).

43. Thus, Ms. Brown paid $29.95 in finance charges for a 12-day loan of $354.

44. Defendant failed to provide the required disclosure to Ms. Brown regarding the APR or finance charges regarding this RAL. Defendant received a portion of the bank fees and finance charge on Ms. Brown's ERC in violation of MD. CODE COM. LAW ANN. § 14-3806(a)(2) (West 2011). Defendant failed to provide to Ms. Brown the disclosures specified and required by Maryland RAL law, the TILA, and the Maryland Consumer Protection Act.

## V.  CLASS ACTION ALLEGATIONS.

### A.  CLASS DEFINITION.

45. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for itself and on behalf of a class defined as:

46. All natural persons residing in the State of Maryland who after January 3, 2009 (a) received an Electronic Refund Check (ERC) or Electronic Refund Deposit (ERD) facilitated by Defendant and Defendant's tax preparation fees were deducted from the Electronic Refund Deposit Account established for the ERC or ERD, or (b) received a refund anticipation loan facilitated by Defendant.

47. Specifically excluded from the Class are:

48. all federal court judges who preside over this case and their spouses;

16

49.     all persons who elect to exclude themselves from the Class;

50.     all persons who have previously executed and delivered to Defendant releases of all their

        claims for all of their Class claims; and

51.     Defendant's employees, officers, directors, agents, and representatives and their family

        members.

B.      **RULE 23(a) PREREQUISITES.**

52.     **Numerosity.** The Class is so numerous that joinder of all members is impracticable. At

        this time, Plaintiff does not know the exact size of the Class. Based on information and

        belief, the Class is comprised of at least thousands of members so as to render joinder of

        all Class Members impracticable.

53.     **Commonality.** Common questions of law and fact predominate over individual issues.

        There is a well-defined community of interest in the questions of law and fact involved

        affecting members of the Class. The questions of law and fact common to the Class

        predominate over questions affecting only individual Class members, and include, but are

        not limited to, the following:

        (a)     Whether Defendant received a portion of the finance charge or other bank

                fees for ERCs, ERDs, or Republic RALs that it facilitated in Maryland

                during the Class Period, and if so, whether the receipt of such fee violated

                Maryland's RAL law and/or the Maryland Consumer Protection Act;

        (b)     Whether Defendant disclosed to consumers for which it facilitated ERCs,

                ERDs, or Republic RALs the interest rate, calculated as required by TILA,

and if not, whether such failure violated Maryland's RAL law and/or the Maryland Consumer Protection Act;

(c)     Whether Defendant included the $29.95 charge for the Tax Refund Administration Fee as part of the finance charge calculation when it disclosed the interest rate for ERCs, ERDs or Republic RALs it facilitated in Maryland during the Class Period, and if not, whether such failure violated Maryland's RAL law and/or the Maryland Consumer Protection Act;

(d)     Whether Defendant provided any disclosure of the interest rate for ERCs and ERDs it facilitated to consumers in Maryland during the Class Period, and if not, whether such failure violated Maryland's RAL law and/or the Maryland Consumer Protection Act;

(e)     Whether Defendant provided the specific disclosures required by Maryland's RAL law on a document, separate from the application, when it facilitated RALs in Maryland, and if not, whether such failure violated Maryland's RAL law and/or the Maryland Consumer Protection Act.

54.     **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant uses common practices, applications, forms and disclosures in committing the conduct that Plaintiff alleges damaged her and the Class Members. Defendant uniformly violated Maryland's RAL law and the Maryland Consumer Protection Act by engaging in the conduct as described above, and these violations had

the same effect on each member of the Class.

55.    **Adequacy.** Plaintiff is an adequate representative of the Class because she fits within the class definition and her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff will prosecute this action vigorously for the benefit of the entire Class. Plaintiff is represented by experienced and able attorneys. Class counsel have litigated numerous class actions and complex cases, and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and class counsel can and will fairly and adequately protect the interests of all of the members of the Class.

C.    **RULE 23(b) PREREQUISITES.**

56.    Questions of law and fact common to the Class predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to effectively redress the wrongs done to them on an individual basis. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

57.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By

contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**VI.    CAUSES OF ACTION.**

    A.    **FIRST CAUSE OF ACTION:  VIOLATION OF MARYLAND REFUND ANTICIPATION LOAN AND CHECK DISCLOSURE (MD. COMMERCIAL LAW CODE § 14-3801, *ET SEQ.*).**

58.    Plaintiff incorporates by reference all other portions and paragraphs of this Complaint as if fully set forth herein at length.

59.    The allegations in this cause of action are brought on behalf of Class Members who received an ERC, ERD or Republic RAL on or after October 1, 2010 (the effective date of the Maryland Refund Anticipation Loan Act) and are limited to Defendant's conduct on or after that date.

60.    The named Plaintiff and all class members are "consumers" as defined by MD. CODE COM. LAW ANN. Code § 14-3801(b) (West 2011) because they were solicited for, applied for, and received a RAL.

61.    Defendant is a "facilitator" as defined by MD. CODE COM. LAW ANN. § 14-3801(d) (West 2011) because Defendant processed, received, and accepted applications and agreements for RALs, serviced and collected on RALs, and facilitating the making of RALs, and is neither a bank, savings and loan association, or credit union, nor an intermediary that did not deal with the public in making a RAL.

62.    The Republic RALs and ERCs/ERDs facilitated by Defendant are RALs as defined by

20

MD. CODE COM. LAW ANN. § 14-3801(e), (f) (West 2011).

63. Defendant violated MD. CODE COM. LAW ANN. § 14-3806(a)(2) (West 2011) and MD. CODE COM. LAW ANN. § 14-3802(1), (2) (West 2011) by receiving a portion of the bank fees and finance charge on each Republic RAL, ERC and ERD it facilitated for a Class Member.

64. Defendant violated MD. CODE COM. LAW ANN. § 14-3804 (West 2011); MD. CODE COM. LAW ANN. § 14-3802(1), (2); and MD. CODE COM. LAW ANN. § 14-3806(a)(5) (West 2011) by failing to disclose on a paper form separate from the bank product application in 14-point type face the interest rate "using the guidelines established under the federal Truth in Lending Act" for each Republic RAL, ERC and ERD it facilitated for a Class Member. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

65. Defendant violated MD. CODE COM. LAW ANN. § 14-3804 (West 2011); MD. CODE COM. LAW ANN. § 14-3802(1), (2) (West 2011); and MD. CODE COM. LAW ANN. § 14-3806(a)(5) (West 2011) by failing to disclose on a paper form *separate* from the bank product application in 18-point type face the specified disclosures required by MD. CODE COM. LAW ANN. § 14-3804(a)(4), (c)(4) (West 2011) to each Class Member who received a RAL, ERC or ERD. The disclosures were not on a form separate from the bank product application. The disclosures were not in 18-point type face. The disclosures did not

21

include all the specific disclosures in the format specified by Maryland's RAL law.

66. Defendant violated MD. CODE COM. LAW ANN. § 14-3803 (West 2011); MD. CODE COM. LAW ANN. § 14-3802(1), (2) (West 2011); and MD. CODE COM. LAW ANN. § 14-3806(a)(5) (West 2011)by not prominently displaying required information including the interest rate, accurately calculated consisted with the TILA, in each office where Defendant facilitated a Republic RAL, ERC or ERD for a Class Member.

67. Each of Defendant's failures to comply with Maryland RAL law, MD. CODE COM. LAW ANN. § 14-3801 *et seq.* (West 2011), is an unfair or deceptive trade practice within the meaning of the Maryland Consumer Protection Act. MD. CODE COM. LAW ANN. § 14-3807(a) (West 2011) and Defendant is therefore liable for the following remedies provided under that Act, including attorney's fees and costs. MD. CODE COM. LAW ANN. § 13-408(b) (West 2011).

68. In addition to the remedies provided under the Maryland Consumer Protection Act, for each violation set forth herein, Defendant is liable under MD. CODE COM. LAW ANN. § 14-3807(b) (West 2011) for: (1) actual and compensatory damages; (2) $1,000 statutory damages; and (3) reasonable attorney's fees and costs. MD. CODE COM. LAW ANN. § 14-3807(b) (West 2011).

B. **SECOND CAUSE OF ACTION: VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT (MD. COMMERCIAL LAW CODE §13-301, *ET SEQ.*).**

69. Plaintiff incorporates by reference all other portions and paragraphs of this Complaint as if fully set forth herein at length.

70. Defendant is a "person" for the purposes of the Maryland Consumer Protection Act

pursuant to MD. CODE COM. LAW ANN. § 13-101(h) (West 2011).

71. Pursuant to MD. CODE COM. LAW ANN. § 14-3807(a) (West 2011), a facilitator who violates any provision of Maryland's RAL law also violates the Maryland Consumer Protection Act.

72. Additionally, pursuant to MD. CODE COM. LAW ANN. § 13-303(1) (West 2011), it is unlawful for any person to engage in any unfair or deceptive trade practice in the sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services.

73. Defendant violated the Maryland Consumer Protection Act by not accurately disclosing the finance charge for each RAL bank product purchased by a Class Member within the Class Period. For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge. For each RAL, Defendant failed to accurately disclose the interest rate and did not include the Refund Account Fee as part of the finance charge.

74. Defendant's failure to disclose its fees, accurate interest rates, the true nature and character of its product as a loan, and the alternative options available for obtaining tax refunds, constituted an unfair and deceptive trade practice.

75. The federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j (2011), and its implementing Regulation Z, 12 C.F.R. Part 226, are laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, and a violation thereof is a violation of the Maryland Consumer Protection Act.

76. Violations of TILA are determined on an objective standard, based on the representations

in the relevant disclosure documents, with no necessity to establish the subjective misunderstanding or reliance of particular consumers.

77. Defendant is a creditor and Plaintiff and Class Members are consumers for purposes of TILA.

78. Finance charges within the meaning of TILA include fees and amounts charged by third parties where the contracting party requires the use of a third party or where the creditor retains a portion of the third-party charge.

79. The Tax Refund Administration Fee charged to recipients of RALs constitutes a "finance charge" (for deferral of tax preparation fees) within the meaning of TILA, 15 U.S.C. § 1605 (2011), and Regulation Z, 12 C.F.R. § 226.4.

80. Defendant failed to disclose an interest rate calculated utilizing the guidelines established under TILA by failing to consider the Tax Refund Administration Fee a finance charge.

81. For each ERC and ERD customer, Defendant failed to disclose any interest rate or finance charge, thus violating the written disclosure requirements of TILA.

82. For each Republic RAL customer, Defendant failed to accurately disclose the interest rate, because it did not include the Tax Refund Administration Fee as part of the finance charge, which violates the written disclosure requirements of TILA.

83. By violating TILA, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the Maryland Consumer Protection Act.

84. The Maryland Credit Services Businesses Act (MCSBA) applies to to tax preparers that

facilitate refund anticipation loans.

85.   Under the MCSBA, a credit services business is a person who, with respect to the extension of credit by others, represents that the person can or will, in exchange for payment obtain an extension of credit for a consumer. Credit services businesses must obtain licenses from the Commissioner of Financial Regulation.

86.   Defendant assists consumers in obtaining extensions of credit and is compensated for assisting consumers in obtaining a refund anticipation loan from third-party lenders.

87.   The MCSBA prohibits a credit services business from receiving payment for referring a customer to a credit grantor who will or may extend credit to the consumer, if the credit is extended on substantially similar terms available to the general public; make, assist, or advise a consumer to make false statements connected with a credit application; make or use false or misleading representations in offering or selling its services; engage in an act, practice, or course of business that operates as a fraud or deception in connection with offering or selling its services; accept payment before rendering full and complete performance of the contracted services; create or assist a consumer in creating a new consumer credit report by obtaining and using a different name, address, telephone number, Social Security number, or employer tax identification number; or assist a consumer in obtaining an extension of credit at an interest rate which, except for federal preemption, would be prohibited under the State's consumer credit provisions.

88.   A violation of the MCSBA is an unfair or deceptive trade practice under the Maryland Consumer Protection Act, subject to the Maryland Consumer Protection Act's civil

penalties.

89. As a direct and proximate result of the aforementioned acts, Defendant unfairly and improperly received monies and continues to hold the monies belonging to Plaintiff.

90. The harm to Plaintiff outweighs the utility of Defendant's policies, acts and/or practices, and consequently Defendant's conduct herein constitutes an unfair or deceptive trade practice within the meaning of Maryland Consumer Protection Act.

91. The unfair, deceptive and/or fraudulent business practices of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's bank products as described herein.

92. As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiff and proposed Class Members are direct victims of the Defendant's unlawful conduct who have suffered injury in fact and lost money and/or property as a result of Defendant's unfair and deceptive acts and practices.

## VII. PRAYER FOR RELIEF.

**WHEREFORE**, Plaintiff seeks judgment in favor of herself and the proposed Class for the following:

A. That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, and that the best practicable notice of this action be given to members of the proposed Class represented by Plaintiff;

B. That judgment be entered against Defendant and in favor of Plaintiff and the

26

proposed Class on the Causes of Action in this Complaint, for disgorgement, compensatory damages, and statutory damages under the Maryland RAL law and the Maryland Consumer Protection Act;

C. That judgment be entered imposing interest on damages;

D. That judgment be entered imposing litigation costs and attorneys' fees under Maryland RAL law and the Maryland Consumer Protection Act; and

E. For all other and further relief as this Court may deem necessary and appropriate.

Dated: January 5, 2012                                 Respectfully submitted,


                                                       /s/ Robert K. Jenner
                                                       Robert K. Jenner (04165)
                                                       Justin A. Browne (29164)
                                                       Jason Penn (28722)
                                                       JANET, JENNER & SUGGS, LLC
                                                       1777 Reisterstown Road
                                                       Baltimore, MD 21208
                                                       Tel: (410) 653-3200
                                                       Fax: (410) 653-6903
                                                       RJenner@MyAdvocates.com
                                                       JBrowne@MyAdvocates.com
                                                       JPenn@MyAdvocates.com


Of Counsel:

Darrin L. Williams (ABN 94069)
Hank Bates (ABN 98063)
CARNEY WILLIAMS BATES PULLIAM
& BOWMAN, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212

Tel: (501) 312-8500
Fax: (501) 312-8505

Richard M. Golomb, Esq.
Ruben Honik, Esq.
Kenneth J. Grunfeld
GOLOMB & HONIK
1515 Market St., #1100
Philadelphia, Pennsylvania 19102
Tel: (215) 985-9177

*Counsel for Plaintiff and Proposed Class*